JUDGE ENGELMAYER

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

14 CV 9261

GEORGE PHILIP and REX WOODLEY,

          Plaintiffs,

v.

GTECH CORPORATION and MICHAEL
FEILER, in his individual and professional
capacities,

          Defendants.

------------------------------------------------------------X

Civil Action No.

**COMPLAINT**

RECEIVED
NOV 20 2014
U.S.D.C. S.D.N.Y.
CASHIERS

**JURY TRIAL DEMANDED**

Plaintiffs George Philip ("Philip") and Rex Woodley ("Woodley") (collectively, "Plaintiffs"), by and through their undersigned counsel, Wigdor LLP, as and for their Complaint in this action against Defendants GTECH Corporation ("GTECH" or the "Company") and Michael Feiler ("Feiler") (collectively, "Defendants"), hereby allege as follows:

## NATURE OF THE CLAIMS

1.     Plaintiffs Philip and Woodley were forced to endure a pervasive and severely hostile work environment, marked by the repeated use of offensive and outrageous racial slurs and disparate treatment (including discriminatory termination) at the hands of their common supervisor, Mr. Feiler. Although GTECH reaps the financial reward of servicing lottery machines and other gaming equipment in New York City's diverse communities, the Company tolerated for a long period the rampant racist conduct of one of its managers, including the termination of African-American employees shortly after they complained about blatant racially discriminatory conduct.

2. In front of Mr. Woodley, an African-American GTECH employee, Mr. Feiler announced that "these fucking niggers are getting on my nerves."

3. Another time, while dining with Mr. Philip, Mr. Feiler stated that "they [the other patrons in the restaurant] are acting like they never saw a nigger before."

4. In addition to his offensive use of racial epithets regarding African-Americans, Mr. Feiler would also express hateful speech regarding Middle Eastern employees, referring to them as "towelheads" and "terrorists."

5. Plaintiffs also were discriminated against at every turn, facing despicable treatment by Defendants on the basis of their race, ultimately culminating in their termination.

6. This is an action for declaratory, injunctive and monetary relief to redress the unlawful discrimination, hostile work environment and retaliation committed against Plaintiffs throughout their employment in violation of Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("Section 1981"), the New York State Human Rights Law, New York Executive Law §§ 290 *et seq.* ("NYSHRL") and the New York City Human Rights Law, New York City Administrative Code §§ 8-101 *et seq.* ("NYCHRL").

7. Defendants' conduct also is in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"). Plaintiffs will file a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") with regard to these violations, and will file an Amended Complaint following their receipt of a Notice of Right to Sue.

## JURISDICTION AND VENUE

8. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343 as this action involves federal questions regarding the deprivation of Plaintiffs' rights under

Section 1981. The Court has supplemental jurisdiction over Plaintiffs' related claims arising under state law pursuant to 28 U.S.C. § 1367(a).

9. Venue is proper in this district pursuant to 28 U.S.C. § 1391 because GTECH is a domestic business corporation doing business in the State of New York and a substantial part of the events or omissions giving rise to this action, including the unlawful employment practices alleged herein, occurred in this district.

## PARTIES

10. Plaintiff George Philip is an African-American former employee of GTECH. He is a resident of the State of New York and at all relevant times met the definition of an "employee" under all applicable statutes.

11. Plaintiff Rex Woodley is an African-American former employee of GTECH. He is a resident of the State of New York and the County of Queens and at all relevant times met the definition of an "employee" under all applicable statutes.

12. Defendant GTECH is a foreign limited liability company headquartered in 10 Memorial Boulevard, Providence, Rhode Island 02903, with an office at 885 East 140th Street, Bronx, New York 10454. At all relevant times, Defendant GTECH met the definition of "employer" under all relevant statutes.

13. Defendant Michael Feiler is a resident of the State of New York and Senior Field Service Manager of GTECH's Field Service Technicians. At all relevant times, Defendant Feiler was Plaintiff Philip's and Plaintiff Woodley's supervisor, and, in that role, he had the authority to discipline and fire Plaintiffs, direct their work activities, assign their job responsibilities and monitor their performance. At all relevant times, Defendant Feiler was an "employer" within the meaning of all applicable statutes.

3

## PROCEDURAL REQUIREMENTS

14. Following commencement of this action, a copy of this Complaint will be served both on the New York City Commission on Human Rights and the Office of the Corporation Counsel of the City of New York, thereby satisfying the notice requirements of the New York City Administrative Code.

15. Following the commencement of this action, Plaintiffs will file a charge of discrimination with the EEOC. Following their receipt of a Notice of Right to Sue, Plaintiffs will seek leave to file an Amended Complaint to include claims under Title VII.

16. Any and all other prerequisites to the filing of this suit have been met.

## FACTUAL ALLEGATIONS

### Background

17. Plaintiff Woodley began working for GTECH in or around June 1995 as a Level One Customer Service Technician.

18. Throughout the entirety of Mr. Woodley's employment, he worked at the company's Bronx location and was an exceptional employee, even earning a promotion to Field Service Technician Level Two in or around 2005.

19. Mr. Woodley consistently received position performance evaluations during his nearly 20-year employment with Defendants, and was frequently selected to work on special projects in recognition of his superlative work.

20. Mr. Woodley was even used as an example for younger Field Service Technicians, and was active in the training of a large portion of GTECH's staff.

21. Mr. Philip began working for GTECH on or around July 21, 2013 as a Field Service Supervisor based at the Company's Bronx location.

4

22. Mr. Philip's job duties included supervising the performance of 23 Field Service Technicians in the New York City area, coordinating their schedules and servicing GTECH accounts in New York City.

23. Mr. Philip was an excellent employee throughout his career with GTECH, and frequently worked up to 70 hours per week in order to perform his job duties at a high level.

24. Under Mr. Philip's leadership, New York City was ranked first among all of GTECH's locations based on installations and remodels completed, in addition to new sales.

25. Mr. Philips even garnered praise from one of GTECH's largest clients, the New York Lottery, for his consistently strong job performance.

**Hostile Work Environment**

26. Plaintiffs' consistent outstanding performance was achieved in spite of an egregious atmosphere of racial intolerance.

27. Plaintiffs were constantly subjected to hostile and disparate treatment at the hands of Defendant Feiler based upon their race.

28. Mr. Feiler would, in despicable fashion, use the racially hateful epithet "nigger" in front of and with regard to his employees, including Plaintiffs.

29. On one occasion, Mr. Feiler, referring to the Field Service Technicians in the New York City branch, stated: "These fucking niggers are getting on my nerves."

30. Another time, while dining in public with Mr. Philip, Mr. Feiler said: "They are acting like they never saw a nigger before," referring to the other patrons in the restaurant.

31. Mr. Feiler did not limit his racially charged hate speech to African-Americans, but also referred to Nazim Uddin, a Field Service Technician of Middle Eastern descent and Muslim

faith, as a "towelhead," and said that he was acting like a "terrorist," two extremely offensive slurs.

**Discrimination Against Mr. Philip**

32. Throughout Mr. Philip's employment, Mr. Feiler put his racially motivated discriminatory animus towards Mr. Philip on full display.

33. By way of example only, Mr. Feiler would frequently abuse Mr. Philip verbally, cursing at him and questioning the quality of his work in front of Mr. Philip's subordinates.

34. In a thinly veiled attempt to sabotage Mr. Philip's job, Mr. Feiler would often call Mr. Philip into his office on days when Mr. Philip had scheduled doctor's appointments or other personal obligations, such as picking up his children.

35. Mr. Feiler also would call unplanned, unscheduled meetings, making it impossible for Mr. Philip to attend to his responsibilities.

36. Mr. Feiler also would interfere with Mr. Philip's professional responsibilities and reputation, frequently calling Mr. Philip into his office immediately before conference calls that Mr. Philip was supposed to lead with no advance warning in an obvious attempt to prevent Mr. Philip from preparing properly for the calls.

37. Despite the hostile work environment in which Mr. Philip was forced to work and the constant attempts to sabotage Mr. Philip's work, Mr. Philip was still committed to performing his job at a high level.

38. To this end, Mr. Philip even invited Mr. Feiler out for lunch to find out why his hard work and strong performance on the job had been rewarded only with abuse and mistreatment, and to see whether there were any areas in which he could improve his performance or work relationship with Mr. Feiler.

39. Rather than even attempting to justify his inexcusable behavior, Mr. Feiler simply responded that he was "pushing [Mr. Philip's] buttons" intentionally, and that he was only doing so because he "could."

40. Mr. Feiler's response clearly shows that he had no issues with Mr. Philip's work product, but rather was maliciously seeking to destroy Mr. Philip's ability to work at the Company.

**Retaliation Against Mr. Philip**

41. Having reached out to his supervisor only to have his concerns dismissed and fears confirmed, Mr. Philip was left with no choice but to complain to GTECH about and report Mr. Feiler's unlawful and discriminatory conduct.

42. Mr. Philip made such complaints on several occasions, the last of which was made on or around February 27, 2014, during which Mr. Philip listed many of the discriminatory and harassing actions that Mr. Feiler had taken against him.

43. Rather than adhere to the law, or even its own handbook, which expressly states that GTECH will "not tolerate inappropriate verbal or physical conduct of any employee which disrupts or interferes with another's work performance or in any way creates an intimidating, offensive, or hostile work environment," GTECH refused to take any remedial action.

44. On or around March 17, 2014, just a few weeks after Mr. Philip made his protected complaint, Mr. Feiler terminated Mr. Philip.

**Discrimination Against Mr. Woodley**

45. Like Mr. Philip, Mr. Woodley also was subjected to escalating discriminatory treatment and was ultimately terminated because of his race.

46. In or around March 2013, shortly after Mr. Feiler was hired, Mr. Feiler confronted Mr. Woodley regarding the number of hours Mr. Woodley was working.

47. Despite a clean record over a nearly 20-year-long career, Mr. Feiler accused Mr. Woodley of starting his shifts late.

48. This claim was demonstrably false, as Mr. Woodley began each shift on the days in question on time.

49. Determined to find any pretext to terminate another minority employee, Mr. Feiler began to devote significant time to tracking Mr. Woodley by means of a GPS device.

50. Mr. Feiler became so obsessed with tracking Mr. Woodley in order to manufacture a reason to terminate him that Mr. Philip, who also supervised Mr. Woodley, felt compelled to ask Mr. Feiler why company resources were being expended to monitor Mr. Woodley so closely.

51. Once again, Mr. Feiler could not be bothered even to attempt to justify his actions, and merely replied that Mr. Woodley had once slouched in a meeting, an obviously meritless excuse for discrimination.

52. Despite the clearly pretextual nature of the reason given by Mr. Feiler, Mr. Philip offered to go on a "ride along" with Mr. Woodley to assess his job performance.

53. After the ride along, during which Mr. Philip observed Mr. Woodley, Mr. Philip reported to Mr. Feiler that Mr. Woodley was completing all of his assigned tasks and was, in fact, a fine employee.

54. However, Mr. Feiler had already made up his mind that he was going to terminate Mr. Woodley, a minority employee. Mr. Feiler fired Mr. Woodley on September 5, 2013,

following Mr. Woodley's meeting with Lynne Wyllie from GTECH's Human Resources ("HR") Department.

55. The pretext under which Mr. Woodley was terminated was that he was improperly working from home.

56. However, this flimsy excuse does not hold up to scrutiny.

57. Mr. Woodley had worked from home on occasion, of which GTECH was fully aware, and Mr. Woodley had not been disciplined before for working from home.

58. Furthermore, Mr. Woodley was not formally written up, nor was he put on a performance improvement plan before his termination, in direct contravention of GTECH's policy.

**Conclusion**

59. As a result of the hostile work environment caused by Mr. Feiler's frequent use of racial slurs, as well as his racially targeted discrimination against African-American employees, Plaintiffs have suffered – and continue to suffer – from severe emotional distress.

60. Defendants' conduct can be classified as nothing short of deliberate and unlawful discriminatory conduct constituting malicious, willful and wanton behavior in violation of Plaintiffs' legal right to work in an employment setting free of unlawful discrimination, racial discrimination and retaliation.

## FIRST CAUSE OF ACTION
### (Discrimination in Violation of Section 1981)
### (Against All Defendants)

61. Plaintiffs repeat and re-allege each and every allegation in all of the preceding paragraphs as if fully set forth herein.

62. Defendants have discriminated against Plaintiffs on the basis of their race and/or color in violation of Section 1981 by denying them the same terms and conditions of employment available to employees who are White, including, but not limited to, subjecting them to disparate working conditions, repeatedly subjecting them to racist comments and slurs and ultimately terminating their employment.

63. As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of Section 1981, Plaintiffs have suffered, and continue to suffer, monetary and/or economic harm, including, but not limited to, loss of future income, compensation and benefits for which they are entitled to an award of damages.

64. As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of Section 1981, Plaintiffs have suffered, and continue to suffer, mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence and emotional pain and suffering for which they are entitled to an award of damages.

65. Defendants' unlawful and discriminatory actions constitute malicious, willful and wanton violations of Section 1981 for which Plaintiffs are entitled to an award of punitive damages.

### SECOND CAUSE OF ACTION
### (Discrimination in Violation of the NYSHRL)
### (Against All Defendants)

66. Plaintiffs repeat and re-allege each and every allegation in all of the preceding paragraphs as if fully set forth herein.

67. Defendants have discriminated against Plaintiffs on the basis of their race and/or color in violation of NYSHRL by denying them the same terms and conditions of employment

available to employees who are White, including, but not limited to, subjecting them to disparate working conditions and racist comments, and ultimately terminating their employment.

68. As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of NYSHRL, Plaintiffs have suffered, and continue to suffer, monetary and/or economic harm, including, but not limited to, loss of future income, compensation and benefits for which they are entitled to an award of damages.

69. As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of NYSHRL, Plaintiffs have suffered, and continue to suffer, mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence and emotional pain and suffering for which they are entitled to an award of damages.

## THIRD CAUSE OF ACTION
### (Retaliation in Violation of the NYSHRL)
### (Against All Defendants, by Plaintiff Philip)

70. Plaintiff Philip repeats and re-alleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

71. By the actions described above, among others, Defendants retaliated against Plaintiff on the basis of his protected activities in violation of the NYSHRL by, *inter alia*, ignoring his protected complaint about Defendant Feiler's use of racial slurs and discriminatory treatment of African-American employees and ultimately terminating his employment.

72. As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer, monetary and/or other economic harm for which he is entitled to an award of monetary damages and other relief.

73. As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence and emotional pain and suffering for which he is entitled to an award of monetary damages and other relief.

### FOURTH CAUSE OF ACTION
(Aiding and Abetting in Violation of the NYSHRL)
(Against Defendant Feiler)

74. Plaintiffs hereby repeat and re-allege each and every allegation as contained in all of the preceding paragraphs as if fully set forth herein.

75. Defendant Feiler directly participated in the discriminatory and/or retaliatory conduct perpetrated against Plaintiff Woodley, including, but not limited to, manufacturing a false problem with Plaintiff Woodley's job performance, reporting such alleged performance deficiencies to HR, closely tracking Plaintiff Woodley's movements by GPS and ultimately terminating Plaintiff Woodley.

76. Defendant Feiler also directly participated in the discriminatory and/or retaliatory conduct perpetrated against Plaintiff Philip, including, but not limited to, sabotaging Plaintiff Philip's work by calling him into his office immediately before conference calls that he was supposed to lead and ultimately terminating Plaintiff Philip.

77. At all relevant times, Defendant Feiler was a Manager in GTECH's Field Service Technician Group and had the ability to control the terms and conditions of Plaintiffs' employment, including, but not limited to, the power to terminate Plaintiffs' employment.

78. Defendant Feiler knowingly or recklessly aided and abetted the unlawful discrimination and retaliation against Plaintiffs in violation of the NYSHRL, including, but not

limited to, manufacturing false problems with Plaintiffs' work product and ultimately terminating Plaintiffs.

79. As a direct and proximate result, Plaintiffs have suffered, and continue to suffer, monetary and/or economic damages, including, but not limited to, loss of past and future income for which Plaintiffs are entitled to an award of damages.

80. As a direct and proximate result, Plaintiffs have suffered, and continue to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence and emotional pain and suffering for which Plaintiffs are entitled to an award of damages.

### FIFTH CAUSE OF ACTION
### (Discrimination in Violation of the NYCHRL)
### (Against All Defendants)

81. Plaintiffs hereby repeat and re-allege each and every allegation in all of the preceding paragraphs as if fully set forth herein.

82. Defendants have discriminated against Plaintiffs on the basis of their race and/or color in violation of NYCHRL by denying them the same terms and conditions of employment available to employees who are White, including, but not limited to, subjecting them to disparate working conditions, repeatedly subjecting them to racist comments and ultimately terminating their employment.

83. As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of NYCHRL, Plaintiffs have suffered, and continue to suffer, monetary and/or economic harm, including, but not limited to, loss of future income, compensation and benefits for which they are entitled to an award of damages.

84. As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of NYCHRL, Plaintiffs have suffered, and continue to suffer, mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence and emotional pain and suffering for which they are entitled to an award of damages.

85. Defendants' unlawful and discriminatory actions constitute malicious, willful and wanton violations of the NYCHRL for which Plaintiffs are entitled to an award of punitive damages.

### SIXTH CAUSE OF ACTION
### (Retaliation in Violation of the NYCHRL)
### (Against All Defendants, by Plaintiff Philip)

86. Plaintiff Philip repeats and re-alleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

87. By the actions described above, among others, Defendants retaliated against Plaintiff on the basis of his protected activities in violation of the NYCHRL by, *inter alia*, ignoring his protected complaint about Defendant Feiler's use of racial slurs and discriminatory treatment of African-American employees and ultimately terminating his employment.

88. As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer, monetary and/or other economic harm for which he is entitled to an award of monetary damages and other relief.

89. As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment,

stress and anxiety, loss of self-esteem and self-confidence and emotional pain and suffering for which he is entitled to an award of monetary damages and other relief.

90.  Defendants' unlawful retaliatory actions constitute malicious, willful and wanton violations of NYCHRL for which Plaintiff is entitled to an award of punitive damages.

## SEVENTH CAUSE OF ACTION
### (Aiding and Abetting in Violation of the NYCHRL)
### (Against Defendant Feiler)

91.  Plaintiffs hereby repeat and re-allege each and every allegation as contained in all of the preceding paragraphs as if fully set forth herein.

92.  Defendant Feiler directly participated in the discriminatory and/or retaliatory conduct perpetrated against Plaintiff Woodley, including, but not limited to, manufacturing a false problem with Plaintiff Woodley's job performance, reporting such alleged performance deficiencies to HR, closely tracking Plaintiff Woodley's movements by GPS and ultimately terminating Plaintiff Woodley

93.  Defendant Feiler also directly participated in the discriminatory and/or retaliatory conduct perpetrated against Plaintiff Philip, including, but not limited to, sabotaging Plaintiff Philip's work by calling him into his office immediately before conference calls that he was supposed to lead and ultimately terminating Plaintiff Philip.

94.  At all relevant times, Defendant Feiler was a Manager in GTECH's Field Service Technician Group and had the ability to control the terms and conditions of Plaintiffs' employment, including, but not limited to, the power to terminate Plaintiffs' employment.

95.  Defendant Feiler knowingly or recklessly aided and abetted the unlawful discrimination and retaliation against Plaintiffs in violation of the NYCHRL, including, but not

limited to, manufacturing false problems with Plaintiffs' work product and ultimately terminating Plaintiffs.

96.  As a direct and proximate result, Plaintiffs have suffered, and continue to suffer, monetary and/or economic damages, including, but not limited to, loss of past and future income for which Plaintiffs are entitled to an award of damages.

97.  As a direct and proximate result, Plaintiffs have suffered, and continue to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence and emotional pain and suffering for which Plaintiffs are entitled to an award of damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that the Court enter judgment in their favor and against Defendants for the following relief:

A.  A declaratory judgment that the actions, conduct and practices of Defendants complained of herein violate the laws of the United States, the State of New York and the City of New York;

B.  An injunction and order permanently restraining Defendants and their partners, officers, owners, agents, successors, employees and/or representatives, and any and all persons acting in concert with them, from engaging in any such further unlawful conduct, including the policies and practices complained of herein;

C.  An award of damages against Defendants, in an amount to be determined at trial, plus prejudgment and postjudgment interest, to compensate Plaintiffs for all monetary and/or economic harm, including, but not limited to, loss of income, earned bonus pay, reputational harm and harm to professional reputation; for harm to their professional and personal reputations and loss of career fulfillment; for all non-monetary and/or compensatory harm, including, but not

limited to, compensation for physical injury, pain and suffering, serious psychological and emotional distress, mental anguish, stress and anxiety, embarrassment and humiliation; all other monetary and/or non-monetary losses suffered by Plaintiffs;

    D.    An award of punitive damages in an amount to be determined at trial;

    E.    An award of costs that Plaintiffs have incurred in this action, including, but not limited to, expert witness fees, as well as Plaintiffs' reasonable attorneys' fees and costs to the fullest extent permitted by law; and

    F.    Such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury on all issues of fact and damages stated herein.

Dated: November 20, 2014
       New York, New York

Respectfully submitted,

**WIGDOR LLP**

By: _____
    Lawrence M. Pearson
    Brian A. Bodansky

85 Fifth Avenue
New York, New York 10003
Telephone: (212) 257-6800
Facsimile: (212) 257-6845
lpearson@wigdorlaw.com
bbodansky@wigdorlaw.com

*Counsel for Plaintiffs*